**WHOLE COURT**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0246, A15A0247. ALLAN et al. v. JEFFERSON LAKESIDE,
     L.P.; and vice versa.
A15A0479. ALLAN et al. v. JEFFERSON LAKESIDE.

BRANCH, Judge.

A three-year-old boy drowned when his uncle drove the car in which the uncle,
the boy's father, and the boy were all riding into a lake at the apartment complex
where the father and son lived. The parents of the boy, Allan Ali and Abeer Allan (the
Allans), brought this wrongful death and negligence action against their landlord and
the owner of the complex, Jefferson Lakeside, L.P. In Case No. A15A0246, the
Allans appeal the trial court's grant of summary judgment to Jefferson Lakeside; in
Case No. A15A0247, Jefferson Lakeside cross-appeals the denial of its motion to
exclude an expert's testimony ruling. After the Allans had filed their notice of appeal,
however, the trial court dismissed that notice on the ground that they had not timely

completed the record. In Case No. A15A0479, we reverse the dismissal of the Allans' notice of appeal, but we affirm the grant of summary judgment to Jefferson Lakeside in Case No. A15A0246, and we therefore dismiss Case No. A15A0247 as moot.

Case No. A15A0479

1. The Allans first argue that the trial court abused its discretion when it dismissed their notice of appeal. We agree.

OCGA § 5-6-48 (c) provides that a trial court is authorized to dismiss an appellant's notice of appeal "where there has been an unreasonable delay in the filing of [a] transcript and it is shown that the delay was inexcusable and was caused by [the appealing] party." OCGA § 5-6-48 (f) provides, however, that "[a]n appeal shall not be dismissed nor consideration thereof refused because of failure of the court reporter to file the transcript of evidence and proceedings within the time allowed by law or order of court *unless it affirmatively appears from the record that the failure was caused by the appellant.*" (Emphasis supplied.) Although the time elapsed between the filing of the notice of appeal and the completion of the appellate record gave rise to a presumption of unreasonable delay by the Allans, the evidence does not support a determination that the delay in this case was inexcusable in that it was caused by

2

them. This trial court thus abused its discretion by dismissing the Allans' notice of appeal.[1]

A trial court's discretion to dismiss an appeal under OCGA § 5-6-48 "is a legal discretion which is subject to review in the appellate courts." *Young v. Climatrol Southeast Distrib. Corp.*, 237 Ga. 53, 55 (226 SE2d 737) (1976) (citation omitted). Specifically, and as the Supreme Court of Georgia has held, a trial court "has discretion to dismiss an appeal for failure to timely file a transcript *only if* 1) the delay in filing was unreasonable; [and] 2) the failure to timely file was inexcusable in that it was caused by some act of the party responsible for filing the transcript." (Emphasis supplied.) *Baker v. Southern R. Co.*, 260 Ga. 115, 116 (390 SE2d 576) (1990), citing OCGA § 5-6-48 (f); see also *Welch v. Welch*, 212 Ga. App. 667, 668-669 (442 SE2d 857) (1994) (following *Baker*); *Barmore v. Himebaugh*, 205 Ga. App. 381, 382 (422 SE2d 255) (1992) (same); *Boulden v. Fowler*, 202 Ga. App. 237-238 (414 SE2d 263) (1991) (same).

---

[1] In the first sentence of the argument section of its appellee's brief in Case No. A15A0479, involving the dismissal of the Allans' notice of appeal, Jefferson Lakeside states its belief that the underlying appeals "should be decided on their merits." To do so would require reversing the trial court's dismissal of the notice of appeal.

3

The Allans filed their timely notice of appeal from the trial court's grant of summary judgment on September 30, 2013. The notice of appeal designated inclusion of the transcript of the oral argument hearing on summary judgment as part of the appellate record. Only four days later, on October 4, 2013, counsel for the Allans e-mailed the trial court's official court reporter, ordered the transcript of the hearing on the summary judgment motion, and inquired as to the cost of preparing that transcript. On October 7, the court reporter informed counsel that the cost of preparation would be "extra" and in addition to the "shared takedown amount" paid at the hearing, but that she needed to "get back to [counsel] with an estimate" of the preparation cost. A few minutes later, counsel repeated to the court reporter that he needed to know what and where to pay, to which the court reporter replied, "I will get back to you and I will begin the transcript as soon as possible."

Counsel for the Allans averred that in the three weeks following this exchange with the court reporter, and having been promised that the reporter would "begin the transcript as soon as possible," counsel made "several inquiries with the Clerk . . . regarding the transmittal of the record to the appellate court," in response to which the clerk first told counsel that the clerk was "waiting for the transcript to be filed before finalizing the Cost Billing Form," but later said that "the transcript was filed"

4

and then that "the record was complete and that the Cost Billing Form was finalized." The trial court thus clearly erred when it found that counsel for the Allans "made no further inquiry into the status of the transcript [after October 7, 2013] until Defendant filed the [motion to dismiss the notice of appeal]."[2]

Further, on October 22, 2013, or more than a week before the expiration of 30 days after the filing of the Allans' notice of appeal, counsel received the Cost Billing Form from the clerk, the total amount of which included a line item charge of $35.00, designated as "Transcript." Counsel paid this bill on November 8, 2013. Nowhere in the record or the trial court's order is there any evidence to contradict counsel's reasonable inference that this line item charge referred to the transcript of the only in-court proceeding in the case, which counsel had tried to obtain from the court reporter for the purpose of filing it with the clerk. Rather, and as counsel testified, "given that the Cost Billing Form indicated that the record was complete," counsel had "no

---

[2] The trial court's order also consistently misnames the parties and their positions. After first stating that "the ultimate duty to ensure timely preparation and filing of a transcript falls with Defendant [rather than plaintiffs], not the Official Court Reporter," the court repeated its error three more times: that "Defendant," rather than plaintiffs, "failed to follow up" with the reporter; that "Defendant failed to seek appropriate relief from the Court,"; and that "the delay [in filing the transcript] was unreasonable, inexcusable, and caused by Defendant" such that "Defendant's notice of appeal is hereby dismissed."

5

reason to believe that [he] would have been told that the transcript was filed and billed for a transcript, if in fact the [c]lerk . . . had not received it, as the [trial court] knew how much to bill for the transcript." Counsel therefore reasonably if erroneously believed that the transcript, the cost of which had been itemized on the bill he paid, had been prepared by the court reporter and filed with the clerk before the preparation of that bill, which counsel promptly paid. Not until July 2014, when Jefferson Lakeside moved to dismiss the notice of appeal, did the Allans learn that no transcript of the hearing had ever been filed with the clerk of the trial court.

This undisputed evidence makes clear that the Allans' delay in filing the transcript of the oral argument hearing was excusable and not caused by them. See *Welch*, 212 Ga. App. at 669 (reversing dismissal of a notice of appeal when the record left "'no doubt as to whether the delay in filing the transcript was caused by the appellants but establishes beyond dispute that it was not attributable . . . to any act or omission on the part of the appellants'"), quoting *Boulden*, 202 Ga. App. at 238 (reversing dismissal of notice of appeal). Accordingly, the trial court abused its discretion when it dismissed the Allans' notice of appeal.

6

2. In Case No. A15A0246, the Allans argue that the trial court erred when it granted Jefferson Lakeside summary judgment on the Allans' negligence claims because genuine issues of material fact remain as to those claims. We disagree.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (emphasis omitted).

Although we view the record in a light most favorable to the Allans, the relevant facts are not in dispute. The Allans moved into an apartment owned by Jefferson Lakeside in January 2010. On May 1, 2010, a sunny day, the decedent's uncle entered the complex in a car he had rented for more than two weeks. The uncle had driven this same car into and out of the complex on the access road at least twice before. At approximately 12:30 p.m., the uncle was driving out of the complex with his brother (the decedent's father) in the front seat and the decedent strapped into a

car seat in the back seat when the uncle pulled over to the side of the access road in order to obtain a pack of cigarettes from the glove compartment. The access road was two lanes wide. The right side of the access road ended at a curb, with a sidewalk begining a few feet from that curb. A slope led up from the sidewalk to at least 14 feet from the edge of the road, where it turned downward for at least 36 feet to the edge of a lake.

As the father retrieved the cigarettes, the uncle saw a navigation system in the glove compartment and asked his brother to give it to him. When the father did so, and as the uncle attached the navigation system to the dashboard, the uncle lifted his foot off the brake, pressed the accelerator, saw that the contents of the glove compartment were falling onto the floor, and "found [him]self in the air." The car struck the curb, went over it, the sidewalk, up 14 feet of slope, and down an additional 36 feet into the lake, where the car briefly floated. The father opened the front passenger door in an attempt to reach his son, at which water rushed into the car, cutting off its engine and electricity. Although the father could not swim, he managed to escape from the water with help from a bystander, but neither the father nor the uncle was able to free the child before the car became almost completely submerged and the child drowned. Although the uncle was not charged with any crime, a Cobb

County police sergeant testified that had the incident occurred on a public road, rather than private property, the uncle would have been charged with failure to maintain lane and second-degree vehicular homicide.

In this wrongful death and negligence action filed against Jefferson Lakeside in March 2012, the Allans allege that their son died as a proximate result of Jefferson Lakeside's negligence in failing to install a guardrail between the access road and the lake. The Allans also assert claims for negligent infliction of emotional distress and loss of consortium, seeking compensatory and punitive damages. The Allans retained expert witness Richard Rice, who averred that Jefferson Lakeside owed the public a duty to install a guardrail between the road and the lake and that its failure to do so violated applicable design standards and was the proximate cause of the child's death. Jefferson Lakeside moved to exclude Rice's testimony on the grounds that his methodology was not scientifically valid as required by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and that his testimony was therefore irrelevant.[3] The trial court denied Jefferson Lakeside's motion to exclude Rice's testimony, but granted its motion for summary judgment.

_____

[3] Only Jefferson Lakeside's reply briefs in support of its summary judgment motion and the exclusion of Rice's testimony, and not its initial briefs, appear in the appellate record.

As Jefferson Lakeside pointed out below, the outcome of this appeal is controlled by longstanding law to the effect that a landowner cannot be liable as a matter of law for injury resulting from a substantially unforeseeable event because the landowner owes no duty to guard against such an event.

Under OCGA § 51-3-1, an owner or occupier of land is liable to invitees "for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." To state a cause of action for such negligence, a plaintiff must prove "a legally attributable causal connection between the defendant's conduct and the alleged injury." *So. Bell Tel. & Tel. Co. v. Dolce*, 178 Ga. App. 175, 176 (1) (342 SE2d 497) (1986) (citations and punctuation omitted). "The inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery." Id.

"Under Georgia law, questions of negligence and proximate cause are ordinarily reserved for the jury, but in plain and undisputed cases the court may make a determination as a matter of law." (Citations and punctuation omitted.) *Hercules v. Lewis*, 168 Ga. App. 688, 689 (309 SE2d 865) (1983). Specifically,

10

[a]n event is not regarded as being foreseeable if it is one in the nature of an extraordinary coincidence, or a conjunction of circumstances, or which would not occur save under exceptional circumstances; if it is unusual and unlikely to happen, or if it is a rare event in experience, or if other and contingent experiences preponderate largely in causing the injurious effect.

*Standard Oil Co. v. Harris*, 120 Ga. App. 768, 774 (5) (172 SE2d 344) (1969) (citations and emphasis omitted). It follows that

[a] prior and remote cause can not be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, efficient cause of the injury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.

*So. Bell*, 178 Ga. App. at 176 (1). In other words, "[o]ne is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable." *Feldman v. Whipkey's Drug Shop*, 121 Ga. App. 580, 581 (2) (174 SE2d 474) (1970) (citations omitted); see also Prosser and Keeton on The Law of Torts, 5th

11

ed. 1984, § 44, p. 312 (due to "virtually unanimous agreement" that liability must be limited to cover "only those intervening causes which lie within the scope of the foreseeable risk," courts hold that a defendant "is not liable for . . . the reckless or unusual driving of vehicles").

Some of the above restatements of Georgia law come from cases in which, like the appeal before us, a car has ended up in a place improbably far from where it was supposed to remain, with catastrophic results. *Feldman* involved a plaintiff who was using a telephone booth at the edge of the sidewalk adjacent to the front of the defendant's drug store when a vehicle jumped the sidewalk and crashed into the booth, seriously injuring the plaintiff. 121 Ga. App. at 580-581. We held that a trial court correctly dismissed the action because the sequence of events consisting of a car suddenly jumping the curb and sidewalk and crushing the plaintiff against the brick wall of the drugstore was not reasonably foreseeable, with the result that the defendant could not have been negligent as a matter of law for failing to install a guardrail between the parking lot and the telephone booth. Id. at 580-581 (1), (2). Likewise, in *Eckerd-Walton, Inc. v. Adams*, 126 Ga. App. 210 (190 SE2d 490) (1972), the plaintiff was sitting on a counter stool at the defendant's drug store when a car crashed through the plate glass window fronting the store and pinned her against

the counter. Id. at 212 (2). To reach the plaintiff, the car crossed over a five-inch curb, six feet of sidewalk, and a nearly eight-inch high brick foundation wall; went through a plate glass window; and traveled six feet inside the drug store. Id. at 211-212 (2). We held that the trial court should have granted Eckerd's motion for a directed verdict because the defendant "did nothing which proximately caused the plaintiff to be injured" and could not be held liable for such a "remote and improbable" act that could "not reasonably . . . be anticipated . . . in the exercise of ordinary care." Id. at 213 (2); see also *Sotomayor v. Tama I, LLC*, 274 Ga. App. 323, 327-329 (2) (617 SE2d 606) (2005) (physical precedent only) (parents could not recover for death of child killed by a driver who crossed a curb, four feet of sidewalk, and 13 feet of grass before striking the child because the landowner could not be negligent as a matter of law in failing to foresee such an event); *So. Bell Tel.*, 178 Ga. App. at 176 (1) (telephone company could not be negligent for failing to construct a physical barrier between a parking lot and telephones because it was not foreseeable that a car would suffer brake failure and hit the plaintiff).

By contrast, when a car may be anticipated to intrude upon a space sufficiently close to a place where invitees are expected to stand or sit, we have held that a jury may consider whether a landowner could be held liable for the outcome of such an

13

event, which was reasonably foreseeable under the circumstances. See *Chatmon v. Church's Fried Chicken*, 133 Ga. App. 326, 327-328 (211 SE2d 2) (1974) (when car struck plaintiff from the rear while he was standing in front of an outside ordering window, and had jumped a three-to-four inch curb in a parking lot without car guard stops, "reasonable [minds] might differ as to whether [the] accidental injury should have been anticipated" and protection barriers installed); *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 155 (1) (256 SE2d 916) (1979) (when employee had directed the plaintiff to use defendant restaurant's outside window, requiring him to stand on a concrete pad that was 66 inches away from the adjacent parking area, and when the restaurant had failed to install car guards in front of the area where patrons were required to stand, a question of material fact was raised as to the foreseeability of the plaintiff's injury).

The Allans argue that Jefferson Lakeside can be held liable for the results of the uncle's driving here because such erratic driving may reasonably be anticipated. On the contrary, it was not foreseeable that any driver on this access road would unintentionally accelerate from a full stop and cross a curb, a sidewalk, 14 feet up a slope, and 36 feet downward from the top of that slope before entering the lake at issue. Because Jefferson Lakeside could not be negligent as a matter of law for failing

14

to foresee the events at issue here, notwithstanding its failure to install a guardrail along the lake, the trial court did not err when it granted summary judgment to Jefferson Lakeside. *Feldman*, 121 Ga. App. at 580-581 (1) (affirming grant of motion to dismiss complaint of plaintiff injured by a car that drove into telephone booth adjacent to defendant's store); *Eckerd-Walton*, 126 Ga. App. at 211-212 (2) (affirming grant of summary judgment to defendant drug store concerning plaintiff's complaint for injuries suffered when car jumped curb and entered the store).

3. Because we affirm of the trial court's grant of summary judgment to Jefferson Lakeside on the ground that it owed no duty of care to foresee or take precautions to avoid the death of this decedent by installing a guardrail, the matter of the admissibility of Rice's expert testimony is moot. We therefore dismiss Case No. A15A0247.

*Judgment reversed in Case No. A15A0479. Judgment affirmed in Case No. A15A0246. Appeal dismissed in Case No. A15A0247. Barnes, P. J., Ellington, P. J., Miller, Dillard and McFadden, JJ., concur. Andrews, P. J., concurs in part and dissents in part.*

A15A0246.  ALLAN et al. v. JEFFERSON LAKESIDE, L.P.
A15A0247.  JEFFERSON LAKESIDE, L.P. v. ALLAN et al.
A15A0479.  ALLAN et al. v. JEFFERSON LAKESIDE, L.P.

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

Allan Ali Allan  and Abeer Issa Allali, the parents of the minor child who died in the automobile accident described in the majority opinion, filed a notice of appeal from the trial court's grant of summary judgment in favor of Jefferson Lakeside, L.P. (Case No. A15A0246).  Jefferson Lakeside filed a motion in the trial court to dismiss the appeal because of a delay in the filing of a transcript designated by the parents as necessary for consideration of the appeal.  The trial court granted the motion and dismissed the appeal, and the parents appealed from the dismissal order in Case No. A15A0479. Because I conclude that the trial court did not abuse its discretion by dismissing the appeal, I respectfully dissent from the majority's reversal of the

dismissal order in Case No. A15A0479.[1]  Because the trial court correctly dismissed the parents' appeal from the grant of summary judgment in favor of Jefferson Lakeside, the appeal in Case No. A15A0246 should be dismissed.  Accordingly, I respectfully dissent from the majority's consideration of the merits and affirmance in Case No. A15A0246.  In Case No. A15A0247, Jefferson Lakeside cross-appealed in the same action from the denial of its motion to exclude expert testimony presented by the parents.  Because the trial court properly dismissed the parents' appeal, I concur with the majority (although for a different reason) that the appeal in Case No. A15A0247 should be dismissed.

The parents' September 30, 2013 notice of appeal designated inclusion of the transcript of the proceedings of the oral argument hearing on summary judgment as

---

[1] In a footnote quoting the Appellee's Brief filed by Jefferson Lakeside in Case No. A15A0479, the majority opinion states: "Jefferson Lakeside states its belief [in the brief] that the underlying appeals 'should be decided on their merits.'" The majority then concludes that, to reach the merits, "would require reversing the trial court's dismissal of the notice of appeal." The footnote appears to suggest that Jefferson Lakeside has conceded on appeal that the trial court erred by dismissing the parents' appeal.  To be clear, the Appellee, Jefferson Lakeside, did not concede that the trial court's grant of its motion to dismiss the appeal should be reversed.  The Appellee's brief in Case No. A15A0479 argues that the trial court's order dismissing the appeal should be affirmed, while alternately urging this Court to affirm the trial court's grant of summary judgment to Appellee on the merits in Case No. A15A0246. There is nothing unusual about the Appellee's alternative contentions.

2

part of the appellate record. Where the notice of appeal designates for inclusion in the appellate record a transcript of proceedings in the trial court, it is the appellant's duty to have the court reporter prepare the transcript at the appellant's expense and file the transcript with the clerk of the trial court within 30 days after filing the notice of appeal, unless the appellant obtains an extension of time before the expiration of the period for filing. OCGA §§ 5-6-37; 5-6-39; 5-6-41 (c), (e); 5-6-42. Accordingly, the parents had a duty to pay the court reporter to prepare and file the transcript no later than October 30, 2013, or to obtain an extension of time before the filing deadline. On July 30, 2014, Jefferson Lakeside filed a motion in the trial court to dismiss the appeal pointing out that 302 days had passed since the parents filed their notice of appeal on September 30, 2013 designating inclusion of the transcript; that the transcript had not been filed with the clerk of the trial court; and that no extension of time for doing so had been requested or obtained. The record shows that, only after receiving the motion to dismiss did counsel for the parents determine from the court reporter the cost of having the reporter prepare and file the transcript. At that point, the parents paid the court reporter, and the reporter prepared and filed the transcript with the clerk of the trial court on July 30, 2014 – over eight months after the transcript was due to be filed.

Pursuant to OCGA § 5-6-48 (c), the trial court is authorized to dismiss an appeal "where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by [the appealing] party." To dismiss an appeal, the trial court must find all three criteria set forth in OCGA § 5-6-48 (c). First, the trial court must make a threshold finding that the delay in filing was unreasonable, which "refers principally to the length and effect of the delay." *Sellers v. Nodvin*, 262 Ga. 205, 206 (415 SE2d 908) (1992) (citation and punctuation omitted). In considering this criteria, "it should be remembered that the time provided for filing the transcript or record is not jurisdictional, but merely a means of avoiding unreasonable delay so that the case can be presented on the earliest possible calendar in the appellate courts." Id. (citation and punctuation omitted). Second and third, the trial court must find that the unreasonable delay in filing was inexcusable in that it was caused by the appellant. *Baker v. Southern R. Co.*, 260 Ga. 115, 116 (390 SE2d 576) (1990); *Sellers*, 262 Ga. at 206.

> Thus, OCGA § 5-6-48(c) requires the trial court to determine the length of the delay, the reasons for the delay, whether the appealing party caused the delay, and whether the delay was inexcusable, and then to exercise discretion in deciding whether to dismiss the appeal. The trial court's ruling will be reversed on appeal only for abuse of discretion.

*Propst v. Morgan*, 288 Ga. 862, 863 (708 SE2d 291) (2011).

4

On appeal, the parents contend that the court reporter was at fault, asserting that "the trial court's Official Court Reporter had failed to file the transcript, and that Appellant's counsel had taken extensive measures to ensure that the transcript was filed." The parents' response to the motion to dismiss in the trial court showed that, within 30 days of their September 30, 2013 notice of appeal, their counsel contacted the court reporter by email on October 4, 2013, ordered the transcript of the hearing, and asked the reporter about the cost of having the transcript prepared. On October 7, 2013, the court reporter responded by email and informed counsel that the cost of preparation would be "an extra cost" in addition to the "shared takedown amount" that was paid at the hearing, and stated that she needed to look at the estimated pages "and get back to you with an estimate" of the cost. On October 7, 2013, counsel told the court reporter by email to let him know what to pay and where to send payment, and the court reporter responded by email on the same day that "I will get back to you and I will begin the transcript as soon as possible." That was the last communication between counsel and the court reporter until counsel received Jefferson Lakeside's motion to dismiss the appeal filed on July 30, 2014. After the dismissal motion was filed, counsel immediately contacted the court reporter to determine the cost of preparing the transcript, and immediately paid the court reporter to prepare the

5

transcript. The court reporter responded to counsel by email on August 1, 2014 thanking counsel for payment, attaching a receipt for payment, and informing counsel that the reporter prepared the transcript and filed it in the clerk's office on July 30, 2014.

Nevertheless, the parents contend that filing the transcript over eight months late was excusable and not their fault. In response to Jefferson Lakeside's motion to dismiss, counsel for the parents showed that from October 10, 2013 to October 21, 2013, he "made several inquiries with the Clerk of Court regarding the transmittal of the record to the appellate court." According to counsel: "During conversations with staff members, the Clerk of Court first told me that they were waiting on the transcript to be filed before finalizing the Cost Billing Form. In a subsequent conversation I was told the transcript was filed, the record was complete and the Cost Billing Form was finalized." Counsel further stated that, when he received the Cost Billing Form from the trial court clerk, it showed the cost of the record on appeal was $1,070.50, and that it included a line item charge for $35.00 for "Transcript." Counsel paid the total amount of $1,070.50 to the trial court clerk on November 8, 2013 (39 days after the notice of appeal), and assumed that the $35.00 charge for "Transcript" on the clerk's bill for the record on appeal was for the designated transcript prepared and

6

filed by the court reporter. According to counsel, "I had no reason to believe or suspect that the transcript had not been filed given the email communications with the court reporter communicating to me that it would be done . . . [and] [i]t was not until I received Defendant[s'] Motion to Dismiss that I realized that the transcript had not actually been filed as agreed upon."

I find no reasonable basis for the parents' counsel to assume, based on conversations with the clerk's office, that the court reporter prepared the designated transcript, filed it with the clerk, and authorized the clerk to include a bill for the transcript (in the amount of $35.00) as part of the clerk's bill for the record. To the contrary, the last email communication between counsel and the court reporter on October 7, 2013, indicated that counsel asked the court reporter to inform him of the cost of preparing the designated transcript and where to send payment, and the court reporter responded, "I will get back to you and I will begin the transcript as soon as possible." As the record shows, the court reporter did not thereafter contact counsel to inform him of the cost of preparing the transcript, and the reporter and did not prepare or file the transcript because she had not been paid. Under these circumstances, it was not reasonable for counsel to let the deadline expire for having the transcript prepared and filed without making any further effort to contact the court

reporter to inquire about the status of the transcript preparation. Where the appellate has designated a transcript for inclusion in the record on appeal, OCGA § 5-6-42 provides that, "the appellant shall cause the transcript to be prepared and filed [by the court reporter]." Instead of contacting the court reporter to determine the cost and status of the transcript preparation, counsel said he asked the clerk's office about "transmittal of the record to the appellate court" and was told "the transcript was filed [and] the record was complete." It was not reasonable for counsel to simply assume, based on these conversations with the clerk's office, that, contrary to counsel's prior communications with the court reporter, the reporter prepared and filed the designated transcript without being paid, and that a $35.00 charge for "transcript" in the clerk's bill for the record represented the reporter's charge for the designated transcript. In fact, the August 1, 2014 email from the court reporter to counsel shows that the $35.00 "transcript" charge in the clerk's bill for the record (paid by counsel on November 8, 2013) was not the reporter's charge for the designated transcript. Rather, the August 1, 2014 email shows that counsel did not determine from the court reporter the cost of the designated transcript, and did not pay the reporter to prepare and file the designated transcript, until July 30, 2014. The record shows that counsel failed to cause the designated transcript to be prepared and filed by the court reporter

8

because counsel failed to timely pay the court reporter to prepare and file the designated transcript, and failed to stay informed about and monitor the progress of transcript preparation for the appeal.

"[T]he burden to keep accurately informed of the status of transcript preparation remains with the party having the responsibility to file the transcript and it cannot be shifted to the court reporter." *Jackson v. Beech Aircraft Corp.*, 217 Ga. App. 498, 501 (458 SE2d 377) (1995). Accordingly, "the duty to order the transcript and to monitor timely the progress of the reporter's office in transcript preparation is vested upon the appropriate appealing party. . . ." Id. at 502. Based on this duty, we found in *Jackson* that an unreasonable delay in filing the transcript was inexcusable where a party failed to communicate with the court reporter for five months "to obtain an accurate report of transcript preparation status. . . ." Id. at 504. Similarly, in *Coptic Constr. Co. v. Rolle*, 279 Ga. App. 454, 456 (631 SE2d 475) (2006) we concluded that, even though the appealing party had ordered the hearing transcript at issue from the court reporter (and had timely filed a trial transcript and timely paid the costs for preparing the record), the unreasonable delay in filing the hearing transcript was inexcusable where the appellant never communicated with the court reporter during a nine-month period of time after ordering the transcript. In the present case, although

9

counsel for the parents ordered the transcript from the court reporter during the 30-day period for timely filing (and paid the clerk's bill for record preparation), no payment was made to the court reporter for the transcript, there was no assurance by the court reporter that the transcript would be prepared or filed by a certain date, and counsel failed to initiate any further communication with the court reporter for over eight months. Under these circumstances, the parents failed to carry their burden to order the transcript, pay for it, and make sure it was timely filed. *Atlanta Orthopedic Surgeons v. Adams*, 254 Ga. App. 532, 536 (562 SE2d 818) (2002).

The record shows that the delay in filing the transcript delayed the docketing of the appeal and delayed any decision on appeal for at least one term of this Court. For this reason, the trial court did not abuse its discretion in making the threshold finding that the delay in filing the transcript was unreasonable. The trial court also found, as set forth above, that the record showed a failure to communicate with the court reporter about the status of transcript preparation. Accordingly, the trial court did not abuse its discretion by granting the motion to dismiss the appeal on the

10

additional basis that the unreasonable delay in filing was inexcusable and was caused by the parents.[2]

Because the trial court correctly dismissed the parents' appeal from the trial court's grant of summary judgment in favor of Jefferson Lakeside, the dismissal order in Case No. A15A0479 should be affirmed , and the appeal in Case No. A15A0246, and the related cross-appeal in Case No. A15A0247, should be dismissed.

_____

[2] The trial court's order entered on September 16, 2014 dismissing the appeal correctly states that the matter before the court is the "Defendant's 'Motion to Dismiss Plaintiffs' Appeal.'" But in some places the order mistakenly transposes the terms Defendant and Plaintiff, and mistakenly states that "Defendant's notice of appeal is hereby dismissed." This is a mere misnomer, and the Court's order plainly and undisputedly dismisses the Plaintiff's notice of appeal. Moreover, the parents' notice of appeal in Case No. A15A0479 confirms this by stating that their appeal is from "the Order Granting Defendant's Motion to Dismiss Plaintiffs' Appeal . . . entered in this action with the Clerk of Court on September 16, 2014."

11